Thank you. Next case on our docket today is McManus v. Barnegat, number 19-3184. And Mr. Martin, will you be reserving time for rebuttal? Yes, Your Honor. Two minutes for rebuttal. Okay, that'll be granted. I'll keep track of time, and I suggest you do so as well. So, with that said, Mr. Martin, you may proceed. Thank you, Your Honor. May it please the Court, my name is William Martin, and I represent the appellant plaintiff Kevin McManus. The issue before this Court is whether the District Court erred in failing to address plaintiff's argument that he had submitted and proffered sufficient evidence to prove the case under the Scanlon Circumstantial Evidence case, and in finding, as a matter of law, that the indeterminate product defect test applied to these facts. We submit that the District Court clearly erred by failing to even address the Circumstantial Evidence test, and by finding that the only way plaintiff could proceed was by way of the indeterminate product test. Now, this is an appeal to summary judgment motion so that the facts in the light are most favorable to the plaintiff. These are the relevant facts that are in this case. The plaintiff was injured on August 3, 2012. He was using a Crown PTH 50 Series manual pallet jack. This pallet jack was acquired by McKesson Medical, his employer. Counsel, I'm sorry to interrupt, but we're well acquainted with the facts. Can you tell me why, if we rule in your favor, that it would not render the indeterminate product defect test superfluous? Yes, Your Honor. The District Court analyzed it well in Tom's case. The indeterminate product test is a fourth way to establish a manufacturing defect in New Jersey. It was specifically addressed in Murlock for the purpose of determining whether or not a res ipsa-like approach can also be taken by the plaintiff, depending on the circumstances. Can I just interrupt you for one second? Yes. Is the indeterminate product test really the same as the third option in the Scanlon case? It's very similar, Your Honor. It's not exactly the same. The difference between them is that you have to establish an additional requirement. You have to establish that the incident that harmed the plaintiff was of the kind ordinarily that results in a product defect, and the incident was not solely the result of causes other than product defect. There's an additional requirement that has to be ordinarily the type of action that resulted from a product defect. And then, Your Honor, you get an additional charge to the Scanlon third test. All you get is an additional charge. You get a charge that the jury can infer that the product was defective and that it was defective when it left the control of the defendant. Because under Scanlon, the third test, when you exclude other causes, allows the jury to infer that the product was defective when it left the control of the defendant. That's the distinction between the indeterminate product test and the third option under Scanlon. I'm sorry. I interrupted Judge Hardiman's question, so maybe if you can recall what he had asked you. I just couldn't help but – No, I'm sorry, Your Honor. I didn't hear the question. Well, I'm concerned about if we send it back for review under the circumstantial evidence test, I'm concerned that that would render the indeterminate product defect test superfluous. And maybe the way to explain it – I'm just making a suggestion. You can answer it however you want. But it might be helpful for me if you sort of gave concrete examples as to how it would work in practice. Yes, Your Honor. First, it's not superfluous because we argued under a different test. So we did not argue that we excluded other causes under Scanlon, and therefore the indeterminate product test would be part of that analysis. We argued a separate test that we had established that the product did not operate as it was intended in design. And also that under the age, durability, and circumstances of this case, since it was a new product, it's a durable product, that the inference that the product was defective at the time of it leaving the manufacturer existed. And that's a factual question. That's one. But going on to your next point is that it's simply – it doesn't make the – if we had argued that we excluded other causes, it doesn't make the indeterminate product test superfluous. In certain circumstances, a plaintiff could establish that they excluded other causes, but they might not be able to use the indeterminate product test. They may not be able to prove that this is at least to the judge's satisfaction when the charge is requested. Remember, this is a charge that goes to the jury. They may not be able to prove to the judge's satisfaction that this is of the type of harm that results from a product defect and solely not related to other causes. But this case was presented by a plaintiff under a different prom of the Scanlon test, which was that Scanlon allows a plaintiff to prove that the product was not functioning as it was designed. We don't have to prove in any manufacturing defect case a specific defect. And that was the problem in the error of the district court. It misinterpreted New Jersey law by saying that if you did not prove a specific defect, you had to go on the indeterminate product test. That is not New Jersey law. It has been New Jersey law for 40 years that the plaintiff does not have to prove a specific defect. Not only is that stated in Morocco, it's stated in Ceibloch, but it was also stated in the Murlock case that the plaintiff need not prove a specific defect. He only has to prove that the product did not function as intended or designed or like other products that are manufactured and that something was wrong with the product. So let's play this out. So if you prevail here and you get a remand, we would say something to the effect that the district court should evaluate this under the circumstantial evidence test, correct? Or this court could certainly look at the record and make that decision. So, yes. Okay, so as I understand your argument, you're saying this product, this pallet jack was defective because as their own expert testified, the load should be lowered quickly and safely when the lever is at any angle. And your client, Mr. McManus' experience was that it would only lower if it was at a 90 degree angle. Is that right? Yes, Your Honor. Our expert says that the product is designed so that no matter what angle the arm is on, that if you pull the activating lever, it'll drop quickly and that's the design. It didn't function that way at the time of the accident. And we have substantial evidence that from the time that the product was delivered, within a week, it started to malfunction in that way. When Mr. Collins got it, he got it new, and that's when he testified that when he pulled the activating lever, it lowered very slowly. He didn't say anything. He then went to his supervisor when it happened again within that week. Then they took it out to maintenance. They said it seems to be operating, did not do anything to it, gave it back to Mr. Collins. He said immediately coming back to him when he tried to use it that way, it still, when he depressed the activating lever, it did not fall quickly to the ground. It went very slowly. He testified specifically, Your Honor, that this happened for months. And when questioned a month, he said no, within months. This product was only out and in the possession of McKesson and used because it was delivered 10 weeks earlier. It's only a 10-week-old product from being new. And then the plaintiff's accident happened exactly like that. And on the day of the accident, Mr. Stewart from maintenance put a 300 to 400-pound load on it. He tested it. And he also said it didn't function as his design. He said that it only dropped quickly at the upright position, 90 degrees. At any other angle, it didn't drop quickly. He said it dropped very slowly. And then the plaintiff was there during that inspection. The plaintiff said it was very, very, very slowly when it was other than upright. That's a manufacturing defect. The product is not operating as it's intended. The product is not operating as it's designed. But doesn't that sound a little bit like MIRLAC? As I read MIRLAC, the point there is that you can't import the torte concept of residive silocator into these manufacturing defect cases. And aren't you just telling us that there had to be something wrong with it? The thing speaks for itself because it lowered too slowly when it wasn't at a 90-degree angle. We can't tell you what the defect is. But trust us, there must have been some defect because it didn't lower quickly. Absolutely not. We're not arguing that this is a residual-like case. We're not arguing that it's a MIRLAC case. We're arguing Scanlon and Morocco and Sabloff. But I guess how do you prove your case? I guess what you're saying is everything you just said does prove your case is what you're saying. When you get witnesses who testify, look, I invoked the lever and the thing didn't go down properly. That's enough for the jury to find in your favor? Yes, Your Honor, because we have proof from an expert and from their 30B6 rep that the design of this product is that no matter what angle that arm is in, when you pull that lever, it's supposed to drop immediately to the end. And that's what stops the product from moving. Collins said it didn't work. It continued to roll. Plaintiff says it didn't work. It continued to roll. All we have to show is that the product did not function as intended. We don't have to show a specific defect. You win unless the jurors disbelieve Collins and McManus when they say that it lowered slowly. We have to prove that the product from the inference, that it was in control of the defendant. That this defect, meaning that it didn't function as intended, was also in existence at the time it left the manufacturer. And that's where the Scanlon test allows us that inference. That's why it doesn't help you that it didn't work 10 weeks later. You need somebody in the chain of custody that will say, look, as soon as this thing came off the truck, it wasn't working right. And that's what you intend to use Collins for? We intend to use Collins for that. But even if we only had evidence that it was 10 weeks old and that this happened, we would still submit that that's sufficient under the Scanlon test to get to the jury. Because if you look at Scanlon and you look at Morocco, in Morocco especially, there was no evidence that there was any defect in the product. What happened was in Morocco, they said there was a gink. It seemed to invert the burden of proof. Maybe my quarrel is with New Jersey law. I don't know. And you can tell me if it is. But it seems to invert the burden of proof because what you just said is if it's gone 10 weeks from the manufacturer, is it really the defendant's obligation to show the chain of custody and everything that happened to that device during the 10 weeks between the moment it left the manufacturer and the moment that it malfunctioned and the user was injured? Well, first of all, Your Honor, it allows an inference that the jury can conclude that the defect existed at the time it was in possession of the defendant. And then you look at the other factors in Scanlon. The age of the product is one. The durability of the product. The reliability of the product. And, Your Honor, this is a durable product. And this is exactly why the Scanlon test applies. Looking at JA 532, this is the manual from the defendant. This is their brochure. It says durability that lasts. Unlike throwaway trucks available today, Crown's PTH 50 Series features solid construction, generous use of steel, and ergonomic features that make it the easiest to use shift after shift, year after year. This is a durable product intended to be used as durable and marketed as a durable product. Ten weeks later, this is a failure of design. So, we have the right to prove that this is based upon the age of the product. It's only 10 weeks out. That it's a durable product. We also have to prove the ease of maintenance. This even has right here, ease of maintenance. Same page. It's not only is the PTH 50 Series easy to handle and maneuver, Crown has designed it to be as maintenance-free as possible. That's another factor the jury gets to consider at the time. Also, was it an abused product? There's no evidence that it was abused. According to the plaintiff, it was basically brand new when he was using it. Collins doesn't have any testimony that there was any problem with it. Maintenance did not alter the product. Another factor that goes in to whether the jury can infer. And it's a fact question. And basically, the Murak case says, essentially, this is a fact issue. That the jury can infer that this defect, which occurred, we know, within the first week, also existed at the time it left control of the manufacturer. You're out of time. Judge Hardiman, Judge Mady, any other questions? No. Thank you, Your Honor. Okay, great. Mr. McCall, sorry, Mr. Cullen, you may proceed. Sorry. Thank you, Your Honors. First of all, may it please the court, it is always an honor to appear before this esteemed body, even though it's a little different circumstances than usual. I recognize the background well. And I want to point out that when you look at what Judge Mady did in this case, he evaluated the facts at a very meticulous level. He evaluated the law of New Jersey. And we believe he went through that painstakingly and applied it correctly. Plaintiffs want to deal with cases, Scanlon and Muraka, which have been, which were before Murlock and were before New Jersey law had evolved, first of all, to even adopt the New Jersey Product Liability Act. And second, in Murlock, to really announce to New Jersey practitioners how a defect can be proved. And Murlock could not be more clear. Here is what you have to do. If you're alleging a specific defect, you can prove that specific defect by either direct or circumstantial proof. If you are not alleging. I don't want to get too deeply into it. You know, we all read Murlock, and what you're saying is not untrue, of course. I'm wondering about the interplay between Murlock and prior cases like Scanlon. Did it overrule them? What's the effect of Murlock on prior cases? I look at it this way. There's not a pronouncement saying we overrule Muraka or Scanlon or any prior case. What Murlock did was interpret New Jersey law, and to the extent that prior opinions were inconsistent with that, then they were abrogated. But we believe it was an evolution of New Jersey law that culminated in Murlock. And now if you ask any New Jersey practitioner how to establish and how to evaluate whether a product defect has been established, it's Murlock. And when you look at the quote from Murlock, and this is where I have to take issue with what — Can I just interrupt there for a second? Yes. Yes. Your point that if you ask any practitioner, they'll articulate the standard makes me wonder where that articulation of that standard is in New Jersey case law. Murlock was a 1999 case. And so if the sea change that Murlock brought was so evident, why hasn't the standard that you're advocating been crisply articulated over and over again by the New Jersey Superior Court? And why are we sort of grappling with it? It would seem for the first time now some 20 years later. I think, Your Honor, that is evidence in and of itself. In other words, this has not been grappled with because it was very clearly laid out at Murlock. And I'll give you the precise holding, which I believe just satisfies any questions Mr. Martin or anyone can have. If you look at the Murlock opinion and read the holding, what it says is, because we have adopted Section 3 of the Restatement Third of Torts, upon retrial, plaintiff need not prove a specific defect in the chair if he can establish that the incident that harmed him is of the kind that ordinarily occurs as a result of a product defect and that the incident was not solely the result of causes other than a product defect. In other words, the indeterminate product test. Doesn't Murlock also recognize that Section 3 itself adopted Scanlon? There's portions of it. It clearly did. You can use circumstantial aspects if you have evidence of a specific defect. Recall that Scanlon was a specific defect case. Where does it say that? Well, what it says was in Scanlon… I understand. I understand why the indeterminate product defect test says what you just said. But I haven't seen anything that says the circumstantial evidence test requires that. Well, Your Honor, what I said was Scanlon was a specific defect case. And they alleged in that case that there was a idle cam that was defective. And so it has to be interpreted that way. And, in fact, in Scanlon, the court there said you have to show circumstantial evidence and negate other causes, which obviously in this case plaintiff cannot do, as Judge Martinotti ruled. And they're not even taking the position, frankly, that they could meet the Scanlon standard. It's interesting they rely upon Scanlon because if this court were to apply Scanlon, and, frankly, you should not because Murlock is the law of New Jersey. But plaintiff would not get past judgment here either because he was unable admittedly to negate other causes, which Scanlon said was a factor in their determination. So let's assume we disagree with you for a minute. Let's assume that we remand it. And the remand says that the district court needs to take cognizance and apply the circumstantial evidence test. Then what happens on remand? First of all, I believe that would be a misinterpretation of the Supreme Court of New Jersey's law in that regard. But if you commanded the court to do that, I think they would be obligated, obviously, to follow your pronouncement. But I think when you look at what New Jersey law… I'm asking you, how does it play out? As you understand it, if we send it back to the district court… Yes. This is one of many ways the case could be decided. One way the case at this level could be decided is, respectfully, district court, you ruled out the indeterminate product test. We have no quarrel with what you did there. However, there is this other method that a plaintiff can prove a manufacturing defect, namely the circumstantial evidence test. And you, district court, should apply Scanlon. Then what happens on remand? Tell us how you win the case or lose the case on remand. I believe we still convincingly win the case. Judge Martinotti, at that point, would look at the circumstantial evidence. He would look at the fact that no one can identify which specific PTH this was. No one can give you a specific age. I heard 10 weeks, but there's been reference it was four months old, it was two months old. We don't have a bill of lading or anything. No one can identify that. The truck that he keeps referencing was involved in two prior incidents where loads fell. In other words, was this PTH destroyed? Was it hampered? And convincingly here, when you look at his expert's opinions, Mr. Cacciola does not just say I cannot identify a specific defect. He acknowledges this accident could have occurred because of wear and tear, inadequate maintenance, debris in the chamber, all of which are completely unrelated to anything Crown could have done. Mr. Cacciola acknowledged this type of accident can occur without a product defect, convincing that testimony is in the record. In other words, it could have been Mr. McManus's own negligence. He violated his training. He violated the instructions in the manual. He did many things wrong. And plaintiff in the same case has identified another sole cause. Plaintiff put up an expert, Mr. Nolte, to say the cause of this accident, the cause. Was the slope of the parking lot. Was the slope of the parking lot. Well, the other defendant was in the case. Then he settled out. I get that. But you can't come back and say I could meet the Scanlon standard because you couldn't. Now, I don't think Scanlon should be documented as the standard here because Murlock has clearly stated what it is. But plaintiff would not come close to meeting the same standard that the court in Scanlon applied. Because we have circumstantial evidence of many potential causes of this accident. We don't have compelling proof that there was a defect. It's never been identified. And all plaintiff's expert can say is it could have happened for myriad reasons, including a nut being improperly assembled, a ball check valve, wear and tear, maintenance. This could be debris in the chamber. Is it your burden to prove those things or is it their burden to prove the non-existence of those things? It's absolutely their burden to prove the non-existence. Because, Your Honor, and that's why Murlock, we believe, clarified New Jersey law to say there's now three ways to prove that you have a manufacturing defect. If you have a specific defect, you can use either direct or circumstantial evidence. And that's clearly stated. That's part of Scanlon. That's part of old school New Jersey law. But if you do not, if you cannot point to a specific defect, you must meet the requirements of the Restatement Third, which we adopted. And a point that, Your Honor, Judge Hardiman made earlier, if this court were to say that you can go back and use only circumstantial proof in a nonspecified defect case, I believe the adoption of the Third Restatement, Section 3, would be completely superfluous. Because all the court could have said then is, this can be handled under a Scanlon analysis. When you don't have... Just to make sure I understand your argument. Yes. You're saying that the circumstantial evidence test does retain vitality in New Jersey, but only if it's a specific defect case. And because this case is an unspecified defect case, the circumstantial test, evidence test, does not apply. That's 100% accurate in terms of what New Jersey law is. And I believe Murlock said that clearly. You can use either circumstantial... Show us in Murlock. So I have Murlock right in front of me. And it refers to the circumstantial evidence test as one way of proving a manufacturing defect. I'm not seeing in here that it applies only in a specific defect case. Where does the defendant say that? I believe it says it on page... In my copy, it's page 13. But I believe, if you look at... It's at the holding in Section 3, page 41. And it says, because we have adopted Section 3 of the restatement, plaintiff need not prove a specific defect in the chair if he can establish that the incident that harmed him is of the kind that ordinarily occurs. In other words, if you do not have a specific defect, you can rely upon and you must rely upon Section 3, only if it says. But if you have a specific defect, New Jersey's law is clear and there's case law before and after Murlock that you can establish it by direct or circumstantial evidence. Plaintiff cannot do that here because to even begin that analysis, you have to identify the specific defect. Which they have admitted, not only their expert, but their counsel has admitted, despite arguments in the reply brief, their counsel has admitted that they have no evidence of the specific defect to Judge Martinotti by letter and in briefing. So, Your Honor, plaintiffs have the option, in terms of New Jersey law, in doing what the overwhelming majority of cases do. It's so rare to get a case where people say, I can't show you a defect, but I still want to proceed with a lawsuit, which is what they're saying here. So New Jersey law was expanded by Murlock to say, if you have a specific defect, which is the overwhelming majority of cases, here's how you do it. We're not going to require direct proof. We're going to also allow circumstantial proof. And that's clearly what Murlock and other courts have said. But if you cannot identify that specific defect, we're going to enhance, we're going to still give you the ability to prove a case, but you must meet the two prongs of the indeterminate defect test. But here, hasn't McManus alleged a specific manufacturing defect, namely that the jack would not drop its load quickly and stop unless the lever was positioned at a 90 degree angle?  Remember, that's something went wrong with the truck. That is clearly like the chair in Murlock. Something went wrong. I don't see it that way. I think something went wrong with the truck is vastly more nebulous than saying that this will not drop the load unless the lever is positioned at a 90 degree angle. It's a much more specific criticism of the device than saying something didn't work. Your Honor, and I would go back to the record here and point out that the expert identified many things that could have happened to this. And in the words of the great Tennessee philosopher, Johnny Major, if you have three quarterbacks, you don't have a quarterback. He has said that this could have been wear and tear. This could have been a misassembled nut. This could have been the ball check valve. Those are the causes of the defect. But that's different than identifying the defect. Those are the reasons why it might not have operated as intended, right? But I agree with that to some extent. But you also need to show what was wrong with the mechanism that allowed that eventuality to occur. In other words, you can't just say I accept lay testimony and therefore that is the defect. You need to say because of X, this is why this failed. They haven't identified a specific defect. And, in fact, Your Honor, they have acknowledged that. Their expert, when I asked him, do you have an opinion regarding what specifically was wrong with this truck, no. Plaintiff's counsel in a letter to the court and an argument acknowledged that they do not have evidence of a specific defect. This is clearly in the record. And they have acknowledged that it could be many factors. And it's, for instance, a court or someone saying the brakes failed and therefore or the steering failed. That's what they're saying here. That in a certain handle position, the brakes didn't work. You have to show us what the defect is that led to that. And plaintiffs have acknowledged on several occasions that they cannot do that here. And their expert has agreed with that. Judge Martin looked at all these facts and indicated on page 15 of his opinion they have not identified a specific defect. And, in fact, have pointed at many other potential causes for this accident. In fact, Mr. Cacciolo. Let me just interrupt. As I recall his opinion, his syllogism is, as you just said, Mr. Cullen, they've not identified a specific defect. That's the first premise. The second is the indeterminate product defect test requires identification of a specific defect. And the conclusion is, therefore, the indeterminate product defect test doesn't apply here. No? No, I disagree with that, Your Honor. I think he ruled that plaintiffs have not identified a specific defect. I agree with that. And he ruled because of that, plaintiff cannot satisfy the specific defect test, either the direct or circumstantial proof. And they must rely upon the ‑‑ Where did he say that? I thought he ruled out, in my opinion, correctly ruled out the indeterminate product defect test. Well, he ruled that it applies here. Wasn't he correct to rule out the application of the indeterminate product defect test? Well, he ruled here that it does apply, but they did not meet the requirements of it. So, if that's what Your Honor is referencing, I agree with that. Yeah, that's why he ruled it out. Yes. The record at summary judgment showed that they couldn't satisfy one of the preconditions to the indeterminate product defect test. Exactly, Your Honor. Right. But that begs the question as to why they're not still in the ballgame under the circumstantial evidence test. And the first thing I heard you argue was, well, Miralak overruled Scanlon, Scanlon's not effective anymore. So, the circumstantial evidence test isn't at issue here. And then I understood your second line of defense, if that one doesn't work, to be that the circumstantial evidence test only applies if you specifically identify the defect, and here they haven't identified the defect. And, Your Honor, that's the line that I want to rely upon, because that's New Jersey law. If you read Miralak, it says, to prove both the existence of a defect and that the defect existed while the product was in the control of the manufacturer. This is in Miralak. A plaintiff may rely upon either direct or circumstantial proof. But the implicit in that is there is a defect. You have to prove. That's when you know there's a defect, and your witness can identify, here's the specific defect. And then I am entitled to use those two methods of proof to do that. And you're saying that has to be an expert witness. It cannot be a lay witness who says, here's the defect. The defect is, when I invoke this thing, it drops quickly and properly, if and only if it's at a 90-degree angle. And I was trained on this pallet jack to be able to invoke the lever and have it drop quickly and safely at any angle. Your Honor, I do believe that Judge Martini dealt with this, too. This truck was considered to be a complex instrumentality. It's a mechanical device. And, therefore, yes, it does require expert testimony to establish a circumstantial or a direct case. And, Your Honor, here we know that the expert himself, when he looked at it, said this could have happened for many reasons. He didn't just say this had to be exactly how plaintiff says it went. So under New Jersey law, your rendition of New Jersey law, somebody gets into an automobile, turns the key, and the car blows up. They can't win that case unless they have an expert who can identify why the car blew up. Your Honor, I think they would either have to meet the – if they have a specific defect, they could meet their standard by direct or circumstantial evidence. If they don't, say the car was destroyed. That's why I said blown up. But then you go to the indeterminate product test. And I think they could meet it because what they would argue is this is clearly not the type of accident that occurs without a defect. Your car doesn't just blow up. They would meet that standard. And then if they negated other causes, which I think they would do in that case, they would say the plaintiff wasn't smoking a stick of dynamite. The defendant's going to argue that they parked the car over a toxic waste site that ignited the thing, and that's why it blew up, not because of a defect in the car. I mean, it's sort of like this case in the sense that something went wrong, and nobody really knows exactly why something went wrong. And, Your Honor, if we cannot establish that, they can't meet their burden. But if plaintiffs can establish through expert testimony that here are all the factors, and I've negated – there was no toxic waste site. There was no, you know, cigarette or firecracker in the car that led to an ignition source. There was no gasoline in the car that lit. There was nothing that would have allowed this car to blow up. They can proceed. New Jersey law has been expanded by Murlock to allow plaintiffs who, in most jurisdictions, would never be able to prove a case because they can't allege what happened, to then use this test, which can be met and has been met on several occasions to allow cases to go forward. But Judge Martin, out of here, went through the specifics and found that plaintiffs' own words, plaintiffs' experts' own words, negated the possibility of them meeting the determinant defect test and correctly ruled that judgment must be granted in Crown's behalf. All right. Well, counsel, your time is up. Any other questions, Judge Hardiman or Judge Mady? Thank you, Your Honor. Your honors. Okay. Thank you. Okay. We'll hear rebuttal from Mr. Martin. Thank you, Your Honor. In short, there's nothing in Murlock that overruled Scanlon, nothing that suggested that Scanlon was overruled. Well, that's the easy argument because Mr. Cullen just said that he's relying on the second point, and the second point I'd like you to address is he says that the circumstantial evidence test is still live and effective in New Jersey, but only if you can identify a specific defect. So here, is he right about that? And if he is right about that, what's the specific defect that you identified? Absolutely is incorrect. Nothing in Murlock or any other case says that the plaintiff can only prove a Scanlon circumstantial evidence test if he identified a specific defect. In fact, Scanlon and Maraca, first in Scanlon, they alleged a specific defect. The court found there wasn't evidence of that. Then they moved on and said, we're going to go through with the test anyway. And they said that all he had to prove was that there was something violent with the truck. That was enough. Maraca was a case where the steering didn't work. That was enough. You have to prove a defect. You do not have to prove the specific defect.  And Murlock did not change that at all. In fact, Murlock remanded under the circumstantial evidence test. It's at page 57, right before the area he quotes. They remanded because they've excluded evidence on the circumstantial evidence test. The appellate division had remanded under a Maraca analysis, and the court sustained that and sent it back for retrial. And then they said, but the plaintiff doesn't have to prove a specific defect if he meets the restatement test. If he doesn't satisfy the restatement test, then he has to prove his case of a manufacturing defect, and that is under Scanlon. So the plaintiff had the option when it went back. And this court already addressed the proper way to handle these cases in Tom's. You have the three tests, direct evidence, circumstantial evidence, or not, or they exclude other evidence. The indeterminate product test does not apply if a specific defect is established. And Your Honor said in the Tom's case, there was a flammable, they said it was unreasonably flammable. So they, Your Honor, the court set aside that. Scanlon had both. It's a perfect example. They said the carburetor didn't work right. They argued and tried the case under a specific defect. Defendant proved that that wasn't true. So that was a specific defect. However, the court said, but we are allowing and addressing the issue under the circumstantial evidence test as well. And they said once there was a violent shaking and evidence of that, plaintiff met that burden of proof under the circumstantial evidence test. Then the analysis becomes whether or not there's sufficient evidence, age, durability, maintenance, the type of product that suggests that that defect was in the possession of the defendant. So it's not only does it survive. You do not have to prove a specific defect. You never have to prove a specific defect under the established case law, which is even adopted in Murlock. They say that you don't have to prove at page 52 a specific defect. You just have to prove that something was wrong with the product and we have established a defect. And they have never briefed the issue or argued the issue under substantial circumstances. They don't exclude that. They say no specific defect. Got to go into term. That's not the law in New Jersey. This court didn't even interpret the law that way in Tom's. So we submit that the proper analysis is to go through direct evidence, circumstantial evidence, or exclude other causes. And the plaintiff can also seek the charge if excludes all other evidence. And if it's the type of product that results in a that would not have occurred to cause this harm if it wasn't a product defect. But we haven't asked for that charge. We have a right to prove our case the way we want under New Jersey's established law. And that's a circumstantial evidence test. District Court erred by not addressing that. And we have sufficient evidence to meet that test so that inference gets the jury. Did the district court say anything about the circumstantial evidence test? It cited the Scanlon law and did not address it at all. There's nothing in the district court's opinion to address the circumstantial evidence test. In fact, they don't even address, I'm looking at page 14 and 15. No, they don't even address the circumstantial evidence. In fact, in footnote four, they just said the plaintiff relies upon Maraca and Sabloff. They pre-paid Murlock. So they didn't address it at all. All right. Well, you're out of time, sir. Judge Hardiman, Judge Mady, anything else? No. Okay. All right. Thank you, Your Honors. We want to thank the counsel for their excellent argument, excellent briefing. We're going to take the case under advisement and wish you all well and hope you found this experience on Zoom to be favorable.